**Raymond Allen DAVIS, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 45S00–9404–CR–367.

Supreme Court of Indiana.

Dec. 13, 1995.

Certiorari Denied March 18, 1996.
See 116 S.Ct. 1275.

Marce Gonzalez, Jr., Appellate Public Defender, Merrillville, for Appellant.

Pamela Carter, Attorney General, Janet L. Parsanko, Deputy Attorney General, Indianapolis, for Appellee.

DICKSON, Justice.

Convicted of murder and found to be a habitual offender, the defendant was sentenced to 80 years. In this direct appeal, he asserts claims of evidence insufficiency and prosecutorial misconduct. We affirm.

The defendant was tried and convicted on each of two counts of murder. Count I charged the knowing or intentional killing of Everett Smith. *See* Ind.Code 35–42–1–1(1). Count II charged that Davis killed Smith while committing or attempting to commit robbery. *See* Ind.Code 35–42–1–1(2). The jury found Davis guilty under both counts and, following the presentation of further

evidence in the habitual offender phase of the trial, found Davis to be a habitual offender. The trial court merged Count I into Count II and gave Davis a fifty-year sentence, enhanced by thirty years for the habitual offender finding. Because the sentence imposes a term of more than fifty years, we have jurisdiction of this appeal. Ind.Appellate Rule 4(A)(7).

The defendant first contends that the evidence was insufficient under our incredible dubiosity rule. He argues that his conviction was based upon the inherently contradictory testimony of an accomplice, whom the defendant claims to be his scorned lover and an untruthful transvestite prostitute.

As a general rule, appellate claims of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences which support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223, 226; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. However, in rare cases, an appellate tribunal may impinge upon the jury's responsibility to judge the credibility of the witnesses. Prior decisions have employed various linguistic formulations to describe when this may occur. *See Tillman v. State* (1994), Ind., 642 N.E.2d 221, 223 ("coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity' "); *Walters v. State* (1986), Ind., 495 N.E.2d 734, 737 ("inherently unbelievable") *Gaddis v. State* (1969), 253 Ind. 73, 81, 251 N.E.2d 658, 662 ("uncredible [sic] dubiosity"); *Penn v. State* (1957), 237 Ind. 374, 379, 146 N.E.2d 240, 242 ("inherently improbable" testimony). In essence, when faced with a claim of inherently improbable or incredibly dubious testimony, the court on review will reverse only when no reasonable person could believe it. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904.

In the present case, the State's principal witness, Anthony Bussey, was initially a co-defendant. He was testifying pursuant to a plea bargain under which the State agreed to dismiss charges of murder and felony murder in this case, and Bussey agreed to plead guilty to a new charge of Assisting a Criminal, a Class C felony, and to testify as a State's witness against Davis. He had not yet been sentenced at the time of Davis's trial. Bussey's extensive testimony included the following. The incident began as Bussey was "prostituting," Record at 420, while dressed as a woman. The decedent, Smith, drove by, exchanged waves with Bussey, and pulled over. Bussey got into the car. Smith drove behind a building and asked Bussey, "How much?" When Bussey told him "twenty dollars," Smith pulled down his pants, and Bussey removed a cough drop from his mouth and put it on the dashboard. However, when Bussey disclosed that he was not a woman, a disagreement ensued. Bussey then called for the defendant, who came up to the driver's side of the car and shot the victim in the back of the head. Bussey took the victim's wallet and handgun and ran from the scene with Davis, abandoning a twenty-dollar bill on the dashboard of the car. While in jail following his arrest after the murder, Bussey received a twelve-page handwritten letter from the defendant, with whom Bussey had lived for over two years. Bussey identified the handwriting as the defendant's.

The State introduced the twelve-page letter against the defendant as a trial exhibit. In the letter, the defendant expressed disappointment with Bussey's prior statements implicating Davis in the killing of Smith and provided detailed and extensive instructions regarding the story that the defendant wanted Bussey to tell in the future.

We do not find Bussey's testimony wholly uncorroborated nor inherently contradictory with regard to the substantive issues. His statements were supported by police observations at the scene of the murder. The decedent was found slumped over in his car, with his pants unzipped and unbuttoned and with a gunshot wound to the head just behind the left ear. A twenty-dollar bill fell from the vehicle when the victim's body was removed, and an unwrapped throat lozenge or cough drop was found on the dashboard. The existence of the twelve-page letter was corroborated by a copy of the letter, which

was received in evidence. This is not a case of incredible dubiosity. Bussey's credibility and veracity were matters for the jury to determine. Considering the evidence presented, we conclude that a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

The defendant further contends that he is entitled to a new trial because during final argument, the prosecutor asserted facts not in evidence, thereby committing prosecutorial misconduct.

As previously noted, a lengthy letter received by Bussey while in jail was identified by Bussey as being in the defendant's handwriting. Although the State had obtained extensive handwriting exemplars from the defendant in a session which lasted over four hours, the State's expert was unable to conclude that the handwriting in the exemplars was that of the same person who wrote the letter. However, he expressed the opinion that the exemplars were "distorted," and related four possible reasons for distortion, one of those being a deliberate attempt to avoid detection.

The defendant argues that the following portion of the prosecutor's final argument to the jury includes improper final argument constituting prosecutorial misconduct.

> You did hear Sergeant Panhorst from the Indiana State Police testify regarding the exemplars that were taken from the defendant, Raymond Davis. And you will recall that he told you that there are four reasons for distortion. Ladies and gentlemen, the last reason on this list was an attempt to disguise the handwriting. And I submit to you ladies and gentlemen, that that's exactly what Raymond Davis was doing when he was in that room writing for four and one-half hours. That he took his time. He was deliberate in the process of writing on each and every page of that sample, because Mr. Davis knew that the police knew that it was his handwriting this time. So he couldn't make it look like that writing that was in the letter because he did not want to be associated with that letter.

Record at 648. The State responds that this was not misconduct but rather sound advoca-cy skills. It urges that the prosecutor was asking the jury to draw a reasonable inference that the defendant had distorted his handwriting exemplars. We agree and decline to find prosecutorial misconduct. Argument to the jury that seeks to explain the evidence and urges reasonable inferences is not improper.

The judgment is affirmed.

SHEPARD, C.J., and DeBRULER, SULLIVAN and SELBY, JJ., concur.