**INDIAN TRUCKING, a corporation, Gerald Gundlach, Charles R. Geyer, Appellants–Defendants,**

v.

**Matthew HARBER and Sonia Harber, Individually and as Co–Administrators of the Estate of April Harber, Deceased, Appellees–Plaintiffs,**

and

**Jesus A. Pedroza, Appellee–Defendant.**

No. 64A03–0003–CV–77.

Court of Appeals of Indiana.

July 20, 2001.

Steven A. Johnson, Michael J. Rappa, Steven A. Johnson & Associates, Merrillville, IN, Robert G. Kamenec, Keith Alan Schofner, Plunkett & Cooney, P.C., Detroit, MI, Attorneys for Appellants.

Kenneth J. Allen, James E. Brammer, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Defendant–Appellants Indian Trucking, Gerald Gundlach, and Charles Geyer appeal the jury verdict against them in this wrongful death action. They raise seven issues, which we combine and restate as:

I. Whether there is sufficient evidence to support the jury verdict;

II. Whether the trial court erred in denying Defendant Appellants' motion for mistrial;

III. Whether the trial court erred in failing to give two of Defendant Appellants' tendered final instructions;

IV. Whether the trial court submitted an improper verdict form to the jury;

V. Whether Defendant Appellants are entitled to remittitur or a new trial; and

VI. Whether the trial court erred in denying Defendant Appellants' motion to correct error?

We affirm.

### Facts and Procedural History

The facts most favorable to the verdict reveal that, on October 25, 1996, a Ford Tempo driven by seventeen-year-old Jesus Pedroza was involved in a collision with a semitractor-trailer driven by Charles Geyer. Pedroza's vehicle failed to stop at the intersection of U.S. Highway 6 and County Road 200 West, and crossed the westbound lanes of HW 6 in front of Geyer's truck. Skidmarks from the truck show that the truck traveled from the lefthand lane to the righthand lane of westbound HW 6. The front, right-side corner of the truck collided with the rear, right-side door of the Tempo. Sixteen-year-old April Harber, who was seated in the right rear passenger seat of the Tempo, died at the scene of the collision.

On July 2, 1997, Matthew and Sonia Harber filed a complaint against Geyer,

Pedroza, Indian Trucking (the motor carrier), and Gerald Gundlach (the owner of the truck), individually, alleging that the negligence of each defendant proximately caused the death of their daughter, April. Following a trial by jury, a verdict was returned in favor of the Harbers and against Indian Trucking, Gerald Gundlach, Charles Geyer, and Jesus Pedroza. The jury awarded the Harbers a total of two million dollars in damages, assessing fault among the Defendants as follows: Indian Trucking 50%, Gerald Gundlach 15%, Charles Geyer 15%, and Jesus Pedroza 20%. On January 21, 2000, Indian Trucking, Gerald Gundlach, and Charles Geyer (hereinafter "Defendant Appellants") filed a motion to correct error, which was denied by the trial court on the same day. This appeal ensued.

## I. Sufficiency of the Evidence and Proximate Causation

Our standard of review of sufficiency of the evidence is the same in civil cases as in criminal cases. *Gash v. Kohm,* 476 N.E.2d 910, 914 (Ind.Ct.App.1985). We consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom. *Davis v. State,* 658 N.E.2d 896, 897 (1995). We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* The verdict will be affirmed unless we conclude that it is against the great weight of the evidence. *Gash,* 476 N.E.2d at 914.

■ The negligence alleged in the Harbers' complaint is based in large part on Defendant Appellants' violations of a number of Federal Motor Carrier Safety (FMCS) Regulations. These Federal regulations are incorporated by reference into

Indiana Code section 8–2.1–24–18(a). Under Indiana law, an unexcused or unjustified violation of a duty dictated by statute is negligence per se. *Town of Montezuma v. Downs,* 685 N.E.2d 108, 112 (Ind.Ct. App.1997). If a statutory duty exists, the trier-of-fact must consider whether the breach of such duty was a proximate cause of any injury. *Id.* Breach of a statutory duty raises no liability for injury to another unless said breach was a proximate cause of the injury. *Id.* "In order for an injury to be the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed." *Id.*

Defendant–Appellants assert that no evidence of probative value was introduced to show that their conduct was a proximate cause of the accident in which April Harber was killed. They claim that, in order to show proximate cause through their expert witnesses, the Harbers had to establish the speed and direction of the Tempo, and that, because this was not accomplished, the evidence is insufficient to support the verdict.[1] We disagree.

■ Acts of negligence need not be the sole proximate cause of the injury in order for liability to arise. *Ingersoll–Rand Corp. v. Scott,* 557 N.E.2d 679, 684 (Ind.Ct.App.1990). If a party's negligence is *a* proximate cause of the injury, that party shall be liable for the injury. *Id.* (emphasis added). Therefore, if multiple parties owe concurrent duties to the injured party, each may be liable for breach of their respective duty. *National R.R. Passenger Corp. v. Everton by Everton,*

---

1. Defendant–Appellants spend a considerable amount of time on this assertion in their brief. However, our review of the record shows that, in order to establish that the conduct of each of the Defendant Appellants was a proxi- mate cause of April Harber's death, it is not necessary to pinpoint the speed and direction of the Pedroza vehicle; ample other evidence exists to establish proximate cause.

655 N.E.2d 360, 366 (Ind.Ct.App.1995). For the sake of clarity, we will address the issues pertaining to sufficiency and proximate cause for each Defendant–Appellant individually.

### A. *Charles Geyer*

■ Charles Geyer was the driver of the semitractor-trailer involved in the accident. The statutory duty imposed on drivers to perform inspections and make reports is clearly separate from that imposed on motor carriers. FMCS regulation section 396.13 creates a duty for the driver to inspect the motor vehicle prior to driving it. The driver must "be satisfied that the motor vehicle is in safe operating condition." FMCS Reg. § 396.13. In addition to his statutory duties, Geyer owed a common-law duty as a driver on our state's roadways to maintain a proper lookout while traveling. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1281 (Ind.Ct.App.1996).

The record contains ample evidence to support the jury verdict against Geyer. The Harbers' FMCS regulation expert demonstrated on a model truck brake how a driver is supposed to inspect and adjust the brakes before and after each trip. In addition, she showed the jury how a brake that is out of adjustment would provide "no braking whatsoever." R. at 1924. The witness also testified that a driver could observe without difficulty whether the brakes of the truck were out of adjustment.

Geyer testified at trial that, although he was certain he inspected the truck's brakes prior to driving it on the date of the accident, he did not feel he was "qualified to do the adjustment," if any was needed. R. at 1734. Another expert witness testified that a post-accident inspection revealed that the braking mechanisms on the five axles of the truck were most likely at the "outer limit of adjustment," out of adjust-

ment or completely inoperative at the time of the accident. R. at 1656–67. There was also evidence that the righthand brakes on the truck were in worse condition than those on the lefthand side, which would cause the truck to pull to one side if the brakes were applied. As a result, Geyer would have to steer the truck to the right to compensate for the pull, essentially following the path of the Tempo crossing the highway. The evidence further indicated that the truck traveled to the right before colliding with the Tempo. Other evidence revealed that Geyer may have been distracted immediately prior to the accident doing other things such as eating lunch. Any of these examples of Geyer's conduct could have served as legally adequate proximate cause.

We find there is sufficient evidence in the record to support the jury's verdict and judgment entered against Geyer.

### B. *Gerald Gundlach*

■ Pursuant to his contract with Indian Trucking and as the owner of the truck, Gundlach was responsible for hiring a qualified driver to drive for Indian Trucking. Geyer testified that he was never given a "thorough road test" to determine his driving skills and abilities as a truck driver. R. at 1721. Likewise, Gundlach made little or no effort to fulfill his duty to ensure that Geyer observed the driver inspection regulations. The Harbers' case against Gundlach was evidence of his noncompliance with the FMCS regulations and failure to exercise direction and control over Geyer, resulting in an inattentive driver driving the mechanically unsound truck that collided with the Tempo.

We find there is sufficient evidence in the record to support the jury's verdict and judgment against Gundlach.

### C. *Indian Trucking*

█ Indian Trucking, as a motor carrier, had a duty to ensure that Geyer, as the driver, observed the duties imposed upon him by FMCS regulations. FMCS Reg § 390.11. The regulations also made Indian Trucking ultimately responsible for the inspection and maintenance of the motor vehicles it had in its possession and control. *See* FMCS Reg. §§ 396 & 1057. The record contains evidence sufficient to show that Indian Trucking failed to inspect and maintain its truck's braking system and to properly instruct and oversee its driver with regard to trucking safety, all of which were a proximate cause of the collision that resulted in the death of April Harber.

## II. Mistrial

█ Defendant–Appellants next contend that the trial court erred in denying their motion for mistrial, following plaintiff counsel's attempt to elicit testimony from Geyer that the truck he was driving was overweight at the time of the accident. Although the motion was twice denied, Defendant Appellants' objection to the line of questioning was sustained and the jury was admonished to disregard that portion of the testimony both times. Defendant Appellants argue on appeal that the trial court's admonishments were not specific enough to prevent some of the jurors from considering the prohibited evidence in their deliberations. In support of this contention, Defendant Appellants present the "Affidavit of Elizabeth Sanders," who conducted a telephone interview of one of the jurors subsequent to the trial.[2]

Other than an isolated reference to Indiana Trial Rule 16(J), followed by a string of citations to cases generally discussing T.R. 16(J), Defendant Appellants offer no cases or relevant authority in support of their contentions.[3] This failure to comply with Appellate Rule 8.3(A)(7) constitutes waiver of this issue for appellate review. *Berger v. Berger*, 648 N.E.2d 378, 381 (Ind.Ct.App.1995).

## III. Final Instructions

█ Defendant–Appellants argue that the trial court erred in not giving two of their tendered final instructions. Final jury instructions are read to the jury immediately before it retires to deliberate and decide the issues presented at trial. *Peak v. Campbell*, 578 N.E.2d 360, 362 (Ind.1991). The purpose of final jury instructions is to guide the jury in the application of correct principles of law to the facts of the case before them. *Id.* at 361. When seeking a new trial on the basis of improper jury instruction, a party must show "a reasonable probability that substantial rights of the complaining party have been adversely affected." *Id.* at 362.

In this case, the trial court agreed to give Defendant Appellants' tendered final instruction concerning the difference between proximate causation and remote causation. The tendered instruction read as follows:

> The causation element of plaintiff's claim of negligence requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the

---

2. The affidavit is clearly an impermissible attempt to circumvent Evidence Rule 606(b), which severely limits the admissibility of a juror's testimony about the deliberations in a given case. Moreover, Sanders' affidavit is also inadmissible under hearsay rules. *See* Ind.Evid.R. 606(b), 801–02.

3. They also reference a "corresponding subsection in Argument I," which has no relevance to either the standard of review of the trial court's denial of the motion for mistrial or supporting authority for their assertion of error.

defendants' conduct, and the plaintiffs' burden may not be carried with evidence based merely on supposition or speculation.

A fundamental element of proximate cause is that the injury or consequence of the wrongful act be of a class reasonably foreseeable at the time of the act and the question is whether the wrongful act is one of proximate cause rather than remote cause.

A remote cause is not a proximate cause. A remote cause is a negligent act that merely creates a condition by which subsequent injury producing acts of another are made possible.

R. at 1321. However, the final instruction actually read by the trial court was, nearly verbatim, the Indiana pattern jury instruction on proximate cause:

"Proximate cause" is the cause which produces the injury complained of and without which the result would not have occurred. That cause must lead in a natural and continuous sequence to the resulting injury.[4]

R. at 1338. Defendant–Appellants did not waive appellate review of this claim by failing to object during the trial. *Whitehair v. State*, 654 N.E.2d 296, 307 (Ind.Ct. App.1995); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind.App. 186, 201, 370 N.E.2d 941, 953, (1977)("[A] party requesting an instruction to the jury is not required to make a specific objection if the court subsequently fails to give it.").

■ However, Defendant–Appellants are entitled to no relief. Proximate cause is an essential element that must be proved by the plaintiffs in a negligence action in order to establish liability. *Peak*, 578 N.E.2d at 361. A cause is either a proximate cause or it is not. Contrary to the instruction tendered by Defendant Appellants, a remote cause *can* be a proximate cause. Remoteness of a proximate cause is properly determined by an inversely proportionate adjustment of the fault attributed to the responsible party or non-party by the jury. For these reasons, and in light of the other final instructions given by the trial court, the trial court's omission of the Defendant Appellants' remote cause instruction did not affect their substantial rights. *Gambill v. State*, 675 N.E.2d 668, 674 (Ind.1996)("[J]ury instructions are not to be considered in isolation, but as a whole and with reference to each other.")

■ Next, Defendant Appellants allege that the trial court erred in refusing to give their tendered instruction number two, which provided:

The mere fact that a collision occurred does not mean that Charles R. Geyer was at fault in any manner. I instruct you that motorists upon highways regularly used by the public are not required to anticipate extraordinary hazards, or to be constantly expected and searched for unusual dangers. Motorists are not required to be constantly prepared for every conceivable circumstance, and to insure against every accident, particularly where a dangerous condition was created by the negligence of another. In the absence of contrary indications, a motor-

4. We note that the Indiana pattern jury instruction actually reads: " 'Proximate cause' is *that* cause ..." Grammatically, "that" is a determiner that admits of more than one of the noun it modifies, here "cause." *See* Randolph Quirk & Sidney Greenbaum, *A Concise Grammar of Contemporary English* 61–62 (1978). As such, "that," "any," or "a" is far preferable to "the." However, Defendant Appellants waived any objection concerning this distinction by failing to object to the proximate cause instruction given. T.R. 51(C). Waiver notwithstanding, we find that, when considered within the context of all of the instructions given, any error was harmless error.

ist such as Charles R. Geyer who has the right-of-way at an intersection may assume that vehicles approaching on different streets will yield the right-of-way, and that such other vehicles will not suddenly violate a statute or a rule of the road.

R. at 961. We disagree.

■ In deciding whether the trial court erred in refusing to give a requested instruction, we determine (1) whether the tendered instruction correctly states the law, (2) whether the evidence at trial supports the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by other instructions given. *Peak*, 578 N.E.2d at 361. When these three requirements are met, a trial court should not refuse to give the tendered instruction. *Id.* at 362.

Because the Harbers' claim was based primarily on statutory negligence due to violations of the FMCS regulations by each of the named Defendant Appellants, the tendered instruction set forth above, and particularly the opening sentence, could have been misleading to the jury. Further, the substance of the tendered instruction was covered in large part by several of the other instructions read by the trial court. For instance, the jury was instructed that every driver on a public highway has a duty to exercise care, that drivers shall stop at the intersection of a through highway and yield the right-of-way to vehicles on the through highway that are not required to stop, as well as an instruction on sudden emergency. R. at 1342, 1339, and 1341. Because the instruction was unnecessary and redundant, we affirm the trial court's refusal to give it. Moreover, as Geyer's failure to keep a lookout was not the only negligence alleged, failure to give this instruction did not affect the substantial rights of Defen-

dant Appellants and, therefore, any error in not giving it would be harmless.

## IV.  Verdict Forms

■ Defendant–Appellants next contend that the trial court erred by submitting an improper verdict form to the jury. Specifically, they argue that the verdict forms should have provided only one space for an aggregate percentage of fault to be assigned to Indian Trucking, Gerald Gundlach and Charles Geyer and a separate space for Pedroza. Defendant Appellants suggest that using only one line for their combined fault apportionment would have resulted in the jury assigning a smaller percentage of fault to them. We disagree.

■ The primary objective of the Comparative Fault Act, Indiana Code section 34–51–2–1, is to "modify the common law rule of contributory negligence under which a plaintiff is barred from recovery where he was only slightly negligent." *Mendenhall v. Skinner and Broadbent Co., Inc.*, 728 N.E.2d 140, 142 (Ind.2000). This objective is reached through proportional allocation of fault, whereby each person whose fault contributed to the injury bears his proportionate share of the total fault. *Id.* Indiana Code section 34–51–2–11 provides: "The court shall furnish to the jury forms of verdicts that require only the disclosure of (1) the percentage of fault charged against each party and nonparty; and (2) the amount of the verdict against each defendant."

Defendant–Appellants argue that there was only one duty to put a safe truck on the road and that the one duty could be breached only one time, and that the trial court's failure to treat Defendant Appellants as a single unit on the verdict form was therefore error. This argument is inconsistent with the law and the facts of this case for several reasons.

First, the Harbers filed the instant cause of action naming each of the Defendant Appellants as individual defendants in addition to Pedroza. As illustrated in Part I above, the record contains sufficient evidence to support the jury verdict against each of the Defendant–Appellants individually. In addition to demonstrating the substandard quality of Geyer's driving, the Harbers proved that each of the Defendant Appellants violated at least one FMCS regulation that applied specifically to that Defendant Appellant. The jury could have reasonably found each such violation to be a proximate cause of the accident that resulted in April Harber's death.[5]

Further, the case was tried with Defendant Appellants named as individual defendants, and the trial court was required by statute to furnish a jury verdict form capable of showing the percentage of fault, if any, attributable to each defendant. See Ind.Code § 34–51–2–11(1998). The jury was also instructed on the proper computational model to use in determining the total amount of damages the Harbers were entitled to recover from each defendant. Moreover, the jury received an instruction informing them that, "Any act or omission of an officer, employee, or agent acting within the scope of his authority is considered in law to be the act of the corporation for which the corporation is responsible." R. at 1353. Consequently, the jury was fully informed of the option to combine the fault of Defendant Appellants and attribute it fully to Indian Trucking, limited only by the verdict form's 100% maximum.[6] Finally, it was also within the discretion of the jury to decide that each Defendant Appellant committed a breach of a duty that, in turn, proximately caused April Harber's death. See Control Techniques, Inc. v. Johnson, 737 N.E.2d 393, 398 (Ind.Ct.App.2000).

As a result, we find that the verdict forms submitted to the jury were appropriate.

## V. Excessive Verdict

Defendant–Appellants seek remittitur or a new trial based on the jury's allocation of the $2,000,000 damage award. They argue that the award was not allocated "with respect to the elements of damage upon which the jury was instructed." Appellant's Brief at 48. Defendant Appellants further contend that the jury's award was the result of "passion, partiality and prejudice." Id. We disagree.

A strict standard of review is applied to an allegation of excessive damages. Eakin v. Mitchell–Leech, 557 N.E.2d 1057, 1062 (Ind.Ct.App.1990). The verdict in a wrongful death case will only be considered excessive if it is so outrageous as to indicate passion, prejudice, or partiality rather than reasoned judgment

---

5. Defendant–Appellants contend that the doctrine of respondeat superior applies to this case. However, such vicarious liability is "indirect legal responsibility." Sword v. NKC Hospitals, Inc., 714 N.E.2d 142, 147 (Ind. 1999). This doctrine would only apply in cases where a party is legally responsible for the negligence of another due to the party's relationship to the wrongdoer (i.e., master-servant, employer-employee), not because the party itself did anything wrong. Id. As demonstrated by the evidence, each Defendant Appellant in this cause had a discreet and defined legal duty in tort and is liable through its own breach of duty (i.e. the statutory violations), which is the reason each Defendant Appellant is named as an individual defendant in this case.

6. The imposition of vicarious liability on an employer is dependant upon the facts and circumstances of each case and is generally a question of fact for the jury. Gomez v. Adams, 462 N.E.2d 212, 223 (Ind.Ct.App. 1984).

and assessment. *Kimberlin v. DeLong,* 637 N.E.2d 121, 129 (Ind.1994).

Defendant–Appellants raise four events that occurred during the trial in support of their contention that the jury verdict was the result of passion, prejudice or partiality. First, they complain that, just before the jury was sworn in, it was tainted by communications with the Harbers, who were seated in the courtroom. However, this issue was satisfactorily resolved when Defendant Appellants raised an objection with the trial court and the trial court proceeded to question the jurors individually to ascertain whether there was cause for mistrial. Upon questioning the jurors and determining "there's nothing here," the trial court asked counsel whether any of them wished to make any other kind of record before proceeding with the trial. Defendant Appellants' counsel responded, "I don't believe so, Your Honor." R. at 1615.

Second, Defendant–Appellants assert the argument addressed in Part II above regarding their motion for mistrial. Because we have already affirmed the trial court's denial of their motion, we need not address it here. Third, Defendant Appellants argue that time limitations on the trial rushed the jury into their verdict. However, they fail to present a cogent argument regarding the relationship between the alleged pressures of time limits and the jury verdict or the size of the jury's award to the Harbers.

Finally, Defendant–Appellants claim that a verdict for two million dollars "is excessive given the evidence presented in the case." Appellant's Brief at 52. They suggest that the "jury misinterpreted the jury instruction regarding life expectancies, and calculated damages for the life span of the decedent, rather than the life span of her parents." *Id.* at 55.

We find that the trial court properly instructed the jury regarding the elements to be considered in determining damages, and the life expectancy of April Harber's parents. The jury is presumed to have followed the instructions as given. *Utley v. Healy,* 663 N.E.2d 229, 236 (Ind. Ct.App.1996). Defendant Appellants have failed to demonstrate that the verdict against them expresses passion, partiality or prejudice in the jurors. *See Kimberlin,* 637 N.E.2d at 129.

## VI. Motion to Correct Error

Defendant Appellants filed a motion to correct error with the trial court, which was denied without opinion on the same day it was filed. On appeal, they assert that, based on the allegations of error above, they are entitled to a new trial. We disagree.

When considering a motion to correct error wherein a new trial is requested, the standard of review used by the trial court is controlled by Indiana Trial Rule 59(J)(7). *Precision Screen Machines, Inc. v. Hixson,* 711 N.E.2d 68, 70 (Ind.Ct.App.1999). During such review, the trial court serves as a "thirteenth juror" and has an affirmative duty to weigh conflicting evidence. *Id.* As the thirteenth juror, the trial court (1) hears the case along with the jury; (2) assesses the credibility, intelligence and wisdom of the witnesses, and (3) determines whether the verdict is against the great weight of the evidence. *Id.* If the trial court determines that the verdict is against the weight of the evidence, it has a duty to grant a new trial. *Id.*

The thirteenth juror principle is not intended to "invite the trial judge to cavalierly substitute his evaluation of the evidence in place of a contrary evaluation made by the jury." *Ingersoll–Rand,* 557 N.E.2d at 684. When, as in this case, the

trial court declines to intervene, and refuses to set aside the jury verdict, it is not the province of this court to do so unless the verdict is wholly unwarranted under the law and the evidence. *Id.*

For all of the reasons discussed above, we find that the trial court did not abuse its discretion in denying Defendant Appellants' motion to correct error.

### Conclusion

We find that the trial court committed no error in denying Defendant Appellants' motion for mistrial. The trial court's failure to give the tendered instruction on remote cause was harmless error. The trial court's refusal of the tendered instruction advising that a driver has no duty to anticipate the statutory violation of another was not error. The verdict forms submitted to the jury in this cause of action were proper. Defendant Appellants are not entitled to remittitur or a new trial due to an excessive verdict. Defendant Appellants' motion to correct error was properly denied.

Affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.