# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**RAYMOND A. BASILE**
**PAUL J. CARROLL**
Mercer Belanger, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**AMY L. CUELLER**
The Cueller Law Office
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

OHIO FARMERS INSURANCE COMPANY ）
and S.C. NESTEL, INC., ）
）
    Appellants-Defendants, ）
）
         vs. ）    No. 49A02-1106-CC-534
）
INDIANA DRYWALL & ACOUSTICS, ）
INC., ）
）
    Appellee-Plaintiff. ）

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-0904-CC-18240

**May 22, 2012**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Appellants-defendants Ohio Farmers Insurance Company (Ohio Farmers) and S.C. Nestel, Inc. (Nestel), appeal the trial court's denial of their respective motions for partial summary judgment with regard to plaintiff-appellee Indiana Drywall & Acoustics's (Indiana Drywall) cause against Nestel and Ohio Farmers on its claim for conversion, breach of contract, fraud, and breach of payment on a bond.

Nestel argues that the trial court improperly denied its motion regarding Indiana Drywall's fraud claim because the designated evidence did not support a claim on that count and Indiana Drywall could prove no damages. In the alternative, Nestel maintains that the trial court improperly denied its motion for judgment on the evidence at trial on that count.

Ohio Farmers argues that the trial court improperly denied its motion for partial summary judgment with regard to Indiana Drywall's action for breaching the terms of the bond because the designated evidence establishes that Indiana Drywall did not bring its cause of action against Ohio Farmers in a timely fashion under the terms of the bond.

We conclude that the judgment entered in Indiana Drywall's favor against Nestel was proper, but reverse the denial of Ohio Farmers's motion for summary judgment with respect to Indiana Drywall's bond claim.

<u>FACTS</u>

In August 2005, Nestel, along with Horne Development, L.P. and Horne Properties-Bedford, LLC (collectively, Horne) entered into a contract where Nestel

2

agreed to construct a Walmart and some other retail stores on property that Horne owned in Lawrence County.

Nestel hired several subcontractors to perform certain aspects of the work associated with the project. One of the subcontractors was Indiana Drywall, and on September 12, 2005, it entered into a "Standard Form of Agreement Between Contractor and Subcontractor" (Contract) with Nestel. Appellants' App. p. 239-40. In accordance with the Contract, Indiana Drywall was to furnish all drywall and framing work in relation to the project.

During the course of the project, a dispute arose between Nestel and Horne regarding Horne's claims that Nestel and its subcontractors were wrongfully delaying completion of the project and that there were refusals and delays in making full and prompt payment for labor and materials that had been provided for the project.

By August 22, 2006, Indiana Drywall believed that it had completed all work contemplated under the Contract and various change orders and directives. All of its work was purportedly completed to Nestel and Horne's satisfaction. However, Indiana Drywall told Nestel that it believed that it was entitled to additional compensation for work performed on the project. Nestel disputed the claim, in part, based on certain backcharge claims that Horne asserted on the project because of incomplete and defective work of Nestel's subcontractors, as well as delays for which Horne asserted claims for liquidated damages.

3

When Indiana Drywall completed its work on the project, it alleged that Nestel owed it an outstanding balance of $209,075.38. As a result, on August 31, 2006, Indiana Drywall filed a "Notice of Intention to Hold a Mechanic's Lien" against Horne in the Lawrence County Recorder's Office in the amount of $209,075.38. Id. at 278, 280-87. Thereafter, Indiana Drywall received a few payments from Nestel that reduced the balance that was allegedly owed to $148,633.75.

When Indiana Drywall started to press Nestel for payment in 2007, Nestel informed Indiana Drywall that it had a payment bond on the project. Apparently in light of Nestel's payments and assurances following the recording of the lien, Indiana Drywall did not move to foreclose on the lien.

On May 24, 2007, Nestel faxed a one page document to Indiana Drywall, entitled "Payment Bond" that had been issued by Ohio Farmers. Appellants' App. p. 205, 208-09. Linda Wollom, Indiana Drywall's secretary, contacted Ohio Farmers and indicated that it had not been paid in full for its work on the project. Wollom asked Ohio Farmers what had to be done to file a claim and Ohio Farmers suggested that she send a "letter of request." Tr. p. 193. Thereafter, Hansford Kelly, owner and president of Indiana Drywall, prepared and sent a letter to Ohio Farmers seeking payment under the bond for the outstanding balance that Nestel owed in the amount of $148,633.75. The provisions of the payment bond had been recorded in the Lawrence County Recorder's Office.

In a letter of June 4, 2007, Ohio Farmers acknowledged receipt of Kelly's May 25, 2007 letter and enclosed a proof of claim for Indiana Drywall's use in submitting a claim

4

under the bond. Indiana Drywall received a proof of claim form on July 9, 2007. That same day, Indiana Drywall completed the proof of claim form and faxed and mailed it to Ohio Farmers.

Thereafter, Indiana Drywall received a letter, advising that Ohio Farmers would be in contact at some point concerning Indiana Drywall's claim. Indiana Drywall asked Ohio Farmers to provide it with a copy of its payment bond but Ohio Farmers never did so.

In January 2008, Howard Golden of Nestel contacted Kelly, the owner and president of Indiana Drywall, to see if Indiana Drywall would be willing to waive its lien. In exchange, Golden apparently promised that Nestel would pay Indiana Drywall the outstanding balance of $148,633.75 that was owed.

> The conditional release and waiver states in relevant part that
>
> NOW, THEREFORE, for and in consideration of . . . $148,633.75, the payment of which has been promised as the sole consideration for this Final Conditional Release and Waiver of Lien which shall become effective only upon the receipt of such payment, Subcontractor hereby waives and releases any and all liens. . . .
>
> This Final Conditional Release and Waiver of Lien is given in order to induce payment of the amount indicated above, and becomes effective only upon receipt of such amount by Subcontractor.

Appellants' App. p. 264.

According to the wife of Indiana Drywall's president, Nestel faxed the release and waiver form to Indiana Drywall, and purportedly stated that it would pay Indiana Drywall the outstanding balance of $148,633.75 if the release was signed. Nestel apparently told

5

Greg Kelly—Hansford's son—that Nestel would immediately pay the outstanding balance. However, Nestel never paid and Indiana Drywall subsequently went out of business.

In May 2010, Indiana Drywall received notice for the first time of the specific bond provisions. After obtaining a copy of the bond in June 2010, and having received no further payment from Nestel, Indiana Drywall brought Ohio Farmers into the impending litigation for the purpose of recovering under the bond.

The bond provides in relevant part, that

4. The Surety [Ohio Farmers] shall have no obligation to Claimants [Indiana Drywall] under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor [Nestel] have given notice to the Surety . . . and sent a copy, or notice thereof, to the Owner [Horne], stating that a claim is being made under this bond and, with substantial accuracy, the amount of the claim.

Ex. 1. Ohio Farmers representatives testified at trial that Indiana Drywall satisfied the requirements under paragraph 4 of the bond. Tr. p. 179-80. The bond also provides that

6. When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

6

Tr. Ex. 1. Ohio Farmers admitted that it did not satisfy the requirements of paragraph 6 of the bond.

Judy Kelly verified that Indiana Drywall never received a letter from Ohio Farmers disputing Indiana Drywall's claim but stated that if it had, it would have sought the assistance of a lawyer and possibly taken some action against Ohio Farmers. Instead, the only letter that Indiana Drywall received from Ohio Farmers was the correspondence acknowledging receipt of Indiana Drywall's proof of claim and advising that Ohio Farmers would contact it at some point.

Finally, paragraph 11 of the bond provides that

11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of the Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

Tr. Ex. 1 (emphasis added).

On April 20, 2009, Indiana Drywall filed its complaint against Nestel, alleging breach of contract, fraud, and conversion. More specifically, Indiana Drywall alleged that Nestel failed to pay the amount due under the contract, that Nestel committed conversion because it "knowingly and intentionally exerted unauthorized control over monies specifically entrusted to Nestel for the certain purpose of paying Indiana

7

Drywall" under the Contract, and that Nestel's alleged misconduct was fraudulent. Appellants' Amended App. p. 111-15.

Indiana Drywall filed a motion for leave to join Ohio Farmers as an additional defendant, which the trial court subsequently granted. On August 19, 2010, Ohio Farmers filed a counterclaim, alleging that Indiana Drywall's lawsuit was frivolous in accordance with Indiana Code section 34-52-1-1. It also alleged that Indiana Drywall had filed its lawsuit against Ohio Farmers with malicious intent and that the filing of such a claim constituted an abuse of process.

Also on August 19, 2010, Ohio Farmers and Nestel filed separate motions for summary judgment. Nestel maintained that it was entitled to judgment as a matter of law on the fraud and conversion claims because an action for criminal conversion is not a valid legal claim under Indiana's construction law because Indiana "is not a trust fund state by which an obligation is imposed upon . . . Nestel to hold funds paid to it for work performed by Indiana Drywall in trust." Appellants' Amended App. p. 228-29. Nestel also claimed that Indiana Drywall has failed to "identify any facts or allegations that rise to the level of actionable fraud." Id. at 229.

Ohio Farmers claimed that it was entitled to summary judgment because the unambiguous language set forth in the payment bond precludes recovery by Indiana Drywall. Ohio Farmers asserted that the only way in which it could be obligated to pay Indiana Drywall any amount relating to the project is "by and through the Payment Bond." Id. at 137. Ohio Farmers maintained that Indiana Drywall failed to satisfy the

8

one-year requirement to recover under the bond and that Indiana Drywall failed to file suit in Lawrence County, "in which the work or part of the work is located," which the terms of the Payment Bond required. Id. at 146.

Following a hearing on November 22, 2010, the trial court denied Ohio Farmers's motion for summary judgment. However, the trial court granted Nestel's motion for summary judgment on the conversion claim, but denied the motion on the fraud count, finding that a genuine issue of material fact existed for trial.

On May 24, 2011, the matter proceeded to a jury trial. For purposes of the trial, Ohio Farmers stipulated and agreed that 1) it never provided a copy of its bond to Indiana Drywall; 2) it never rejected or denied Indiana Drywall's claim for payment under the bond; and 3) Indiana Drywall submitted its proof of claim to Ohio Farmers on July 9, 2007. Nestel admitted that it breached the contract with Indiana Drywall in failing to pay the balance due and owing in the amount of $148,633.75, along with prejudgment interest. Thus, the only claim that remained for trial with Nestel was the fraud claim.

At some point, both Ohio Farmers and Nestel moved for a judgment on the evidence, which the trial court denied. On May 25, 2011, the jury entered its verdict in favor of Indiana Drywall and against Nestel on the fraud claim and against Ohio Farmers for breach of the payment bond, which resulted in an award of principal and interest in the amount of $196,196.55, plus attorney fees. Ohio Farmers and Nestel now appeal.

## DISCUSSION AND DECISION

### I.  Ohio Farmers

Ohio Farmers first maintains that the trial court improperly denied its motion for partial summary judgment on Indiana Drywall's claim under the payment bond.  Ohio Farmers argues that it is entitled to judgment as a matter of law because Indiana Drywall failed to file suit against Ohio Farmers under the Payment Bond in a timely fashion.

### A.  Standard of Review

In reviewing summary judgment rulings, we apply the same standard as the trial court.  Kopczynski v. Barger, 887 N.E.2d 928, 930 (Ind. 2008).  Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Id.  The party seeking summary judgment has the initial burden of proving the absence of a genuine issue of material fact as to an outcome-determinative issue. Only then must the non-movant come forward with contrary evidence demonstrating the existence of genuine factual issues that should be resolved at trial.  Kroger Co. v. Plonski, 930 N.E.2d 1, 9 (Ind. 2010).  A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where undisputed facts are capable of supporting conflicting inferences on such an issue.  Mahan v. Am. Standard Ins. Co., 862 N.E.2d 669, 675 (Ind. Ct. App. 2007).   Even if the facts are undisputed, summary judgment is inappropriate when the

10

record reveals that the law has been applied incorrectly.  Masten v. AMCO Ins. Co., 953 N.E.2d 566, 569 (Ind. Ct. App. 2011), trans. denied.

### B.  Ohio Farmers's Claims

We initially observe that in response to Ohio Farmers's contentions, Indiana Drywall asserts that "both Nestel and Ohio Farmers took steps to conceal the one-year limitation from Indiana Drywall," which should excuse it from performing in accordance with the payment bond provisions.   Appellee's Br. p. 12.

The record demonstrates that paragraph eleven of the Contract, as quoted above, provides that any suits against Ohio Farmers under the payment bond must be initiated within one year from the date of the last work under the construction contract or the submission of the proof of claim, whichever occurs first.  Appellants' App. p. 159-64.

Here, the record reflects that the contract between Nestel and Horne was terminated on January 15, 2007, Indiana Drywall submitted its proof of claim to Ohio Farmers on July 9, 2007, and Indiana Drywall filed suit against Ohio Farmers under the payment bond on April 19, 2009.  Hence, the last date on which work under the Contract could have been performed was on January 15, 2007.   Thus, Indiana Drywall filed its complaint one year and three months after that date.

Paragraph eleven of the payment bond is unambiguous.   And generally, where no ambiguity is present, the trial court is constrained by the "four corners rule."  Clark v. CSX Transp., Inc., 737 N.E.2d 752, 757 (Ind. Ct. App. 2000).  More specifically, in Clark it was determined that

11

in construing [a] written instrument, the language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. Even if ambiguity exists, extrinsic evidence is only admissible to explain the instrument and not contradict it.

Id. at 758.

Moreover, such principles are not changed simply because Indiana Drywall is asserting its claim as a third-party beneficiary to a surety agreement. We recently addressed this issue in Town of Plainfield v. Paden Engineering Co., 943 N.E.2d 904, 915 (Ind. Ct. App. 2011):

A contract of surety creates a tripartite contractual relationship between the party secured, the principal obligor, and the party secondarily liable. Meyer v. Bldg. & Realty Serv. Co., 209 Ind. 125, 133, 196 N.E. 250, 253 (1935). A surety is one who undertakes to do that which the principal is bound to do in the event the principal fails to comply with an obligation. Id. While insurance contracts are in many respects similar to surety contracts, there is a "wide difference between the two kinds of contracts." Id. "Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event; whereas a contract of suretyship is one to answer for the debt, default, or miscarriage of another[.]" 209 Ind. at 134, 196 N.E. at 253–54. A surety's liability must be measured by the strict terms of his contract. In re Kemper Ins. Companies, 819 N.E.2d 485, 490 (Ind. Ct. App. 2004).

In Paden, the Town of Plainfield, as a third-party beneficiary to the performance bonds between the principal, Paden Engineering (Paden), and the sureties that issued two performance bonds, sought to obtain payment under the performance bonds for delays and defects in Paden's work. We ultimately found the sureties to be free from liability as a result of the third-party beneficiary Town of Plainfield's failure to satisfy certain

12

conditions relating to notice and certification from the architect. We found in the sureties' favor and enforced these conditions despite the fact that the Town of Plainfield alleged in a third-party complaint that the sureties had first breached the performance bond by failing to compensate the Town of Plainfield.

In this case, paragraph eleven of the payment bond sets forth the one-year limitation period to file suit. In our view, this language is dispositive and entitles Ohio Farmers to the entry of summary judgment on Indiana Drywall's payment bond claim. Also, as noted above, the entire contents of the payment bond was recorded in the Lawrence County Recorder's Office. Appellants' App. p. 158. Indiana Drywall could have obtained the entire payment bond, including but not limited to, the one-year period of limitations, had it requested the same from the Lawrence County Recorder. In short, Indiana Drywall cannot avoid the imposition of summary judgment and create a genuine issue of material fact by citing to its own ignorance and inability to determine its obligations under the bond.

In light of these circumstances, we conclude that the trial court erred in denying Ohio Farmers's motion for summary judgment on Indiana Drywall's claim against it to recover under the payment bond.[1]

---

[1] Because we find that the trial court erred in denying Ohio Farmers's motion for summary judgment, we need not address its contention that the trial court should have granted its motion for judgment on the evidence at trial.

13

As discussed above, Nestel argues that the trial court erred in denying its motion for summary judgment regarding Indiana Drywall's claim for fraud against it.  Nestel maintains that Indiana Drywall failed to properly plead that claim and there were no facts to support the conclusion that there were genuine issues of material fact with regard to the fraud claim.  Nestel asserts that Indiana Drywall's fraud claim was predicated upon a representation of future conduct, a broken promise or on a representation of existing intent that was not executed. Moreover, Nestel asserts that Indiana Drywall failed to establish proof of damages and reasonable reliance to prevail on a claim for fraud.  Thus, Nestel claims that the judgment must be set aside.

We initially observe that the essential elements of actual fraud are a false material misrepresentation of past or existing facts, made with knowledge or reckless ignorance of the falsity, which causes reliance to the detriment of the person relying on the representation.  Comfax Corp. v. North Am. Van Lines, Inc., 587 N.E.2d 118, 125 (Ind. Ct. App. 1992).  The burden of proving by a preponderance of the evidence all of the elements of fraud rests upon the party alleging it.  Holder v. Smith, 105 N.E.2d 177, 181 (Ind. Ct. App. 1952).

### 1.  Pleading

We first address Nestel's contention that Indiana failed to properly plead the count for fraud.  In general, Indiana Trial Rule 9(B) requires that fraud be pleaded with particularity.  To allege fraud sufficiently, "the pleadings must state the time, the place,

14

the substance of the false representations, the facts misrepresented, and identification of what was procured by fraud." Abbott v. Bates, 670 N.E.2d 916, 921 n.3 (Ind. Ct. App. 1996). Indiana Drywall's complaint avers in pertinent part that

> 6. A portion of the total monies entrusted to and received by Nestel on the Project were to be used for the certain purpose of paying Indiana Drywall in full.

> 7. As is evidenced by the attached January 29, 2008 "Final Conditional Release And Waiver Of Lien" ("Release and Waiver"), a true and accurate copy of which is attached hereto as Exhibit B, Nestel does not dispute the amount or the appropriateness of the outstanding balance due Indiana Drywall and has promised to pay same to Indiana Drywall.

> 8. Nestel's promise to Indiana Drywall to pay all sums due under the Contract was and is false. Indiana Drywall relied on Nestel's material misrepresentation which was made by Nestel with knowledge of its falsity. Such material misrepresentation induced Indiana Drywall to enter into the Release and Waiver and refrain from pursuing Nestel for the outstanding balance due, all to Indiana Drywall's detriment.

> 9. Despite Indiana Drywall's repeated demands to Nestel for payment of the outstanding balance described herein, and despite Nestel's promise and obligation, it has failed to make full payment to Indiana Drywall for services rendered pursuant to the Contract.
> . . .

> 21. Indiana Drywall incorporates herein by reference the allegations set forth in paragraphs 1 through 20 as if fully set forth herein.

> 22. S.C. Nestel's actions as described herein were and are fraudulent in nature.

Appellants' App. p. 290-94.

15

In addition to the above, we note that the time of Nestel's alleged fraud is specifically referenced in the release and waiver form that is attached to the complaint as an exhibit. Appellants' App. p. 128. The place is identified by way of the facsimile line referenced at the top of the release. The remaining requirements—the substance of the false representations, the facts misrepresented, and identification of what was procured by fraud—are all specifically identified in the paragraphs of the complaint that are cited above.

Subsequent discovery provided further verification of Indiana Drywall's allegations. For instance, in response to certain of Nestel's Interrogatories, Indiana Drywall reported the following:

> Nestel, through its representatives (Steve Randall, Darrell Akemon, Howard Golden, Steve Nestel), repeatedly assured Greg Kelly and Cory Joy of Indiana Drywall that Nestel would pay Indiana Drywall in full. Additionally, Nestel assured Indiana Drywall that if it executed the Final Conditional Release and Waiver of Lien, payment of the outstanding balance due Indiana Drywall, in the amount of $148,633.75, would be forthcoming. Also, there was never any indication from Nestel that Indiana Drywall would not be paid in full. There were no complaints lodged concerning Indiana Drywall's work, no 24-hour notices, nothing.

Appellants' App. p. 320-21.

> Indiana Drywall and its workers did everything asked of them under the Contract and by Nestel. In return, Nestel promised Indiana Drywall payment in full provided Indiana Drywall released and waived its lien. Indiana Drywall relied on Nestel's representations and released its lien. However, Nestel did not pay Indiana Drywall in full.

Id. at 321.

16

Indiana Drywall was consistently specific about the basis of its fraud claim against Nestel throughout the litigation. For all of these reasons, we conclude that Indiana Drywall has satisfied the requirements of Trial Rule 9 in pleading its claim for fraud against Nestel

### 2. Fraud Generally; Summary Judgment

As noted above, the elements of actual fraud are: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the complainant to rely on the misrepresentation to the complainant's detriment. Jackson v. Blanchard, 601 N.E.2d 411, 418 (Ind. Ct. App. 1992). Deception and reliance involve the state of mind of the victim. As such, their existence or absence is a question for the trier of fact. Once resolved, we cannot disturb that finding without a clear showing that it was not supported by the evidence. Plumley v. Stanelle, 160 Ind. App. 271, 275, 311 N.E.2d 626, 630 (1974).

In this case, the evidence reveals that Nestel received certain monies from Horne that were specifically designated for payment to Indiana Drywall to compensate it for work it had already performed on the project. However, Nestel did not pay that money and retained those funds. Appellants' App. pp. 311-13.

In January 2008, Howard Goldon, on Nestel's behalf, approached Hansford Kelly and represented to him that if Indiana Drywall would release and waive the lien, Nestel would pay Indiana Drywall the $148,633.75 outstanding balance. Id. at 278. In reliance on Goldon's representation, Indiana Drywall signed the release and waiver to secure the

monies it believed would be paid as a result of its relinquishment. Id. at 279. Nestel, however, never intended on paying the outstanding balance owed to Indiana Drywall. The fallacy of Nestel's representation can be inferred from the fact that when it made such a statement, it already had possession of at least a portion of Indiana Drywall's money. Id. at p. 312. In our view, such a statement on Nestel's part amounts to a material misrepresentation of existing facts, made with knowledge of its falsity.

Nestel contends that Indiana Drywall never presented any direct evidence that the alleged statement was false at the time it was made. Appellant's Br. p. 10. However, we have previously held that it is not necessary "that fraud be proved by direct or positive evidence, but it will be sufficient if facts and circumstances be proved from which it can fairly be inferred." Baker v. Meenach, 119 Ind. App. 154, 157, 84 N.E.2d 719, 722 (1949).

Indiana Drywall designated facts and evidence that effectively demonstrated that Nestel had no intention of paying Indiana Drywall following relinquishment of the lien. Further, Indiana Drywall designated evidence showing that it relied on Nestel's material misrepresentation to its detriment. Thus, we conclude that the trial court's denial of Nestel's summary judgment motion was appropriate.

### 3. Judgment on the Evidence

In addressing Nestel's claim as to whether the trial court properly denied its motion for judgment on the evidence at trial regarding Indiana Drywall's fraud claim against it, we first note that Indiana Trial Rule 50 provides that "where all or some of the

issues in a case tried before a jury . . . are not supported by sufficient evidence . . . , the court shall withdraw such issues from the jury and enter judgment thereon. . . ."

Our standard of review on a motion for judgment on the evidence is the same as that governing the trial court in making its decision. State Farm Mut. Auto. Ins. Co. v. Noble, 854 N.E.2d 925, 931 (Ind. Ct. App. 2006). Judgment on the evidence is proper only where all or some of the issues are not supported by sufficient evidence. Id. The trial court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is not appropriate. J.E. Stone Tree Serv., Inc. v. Bolger, 531 N.E.2d 220, 227 (Ind. Ct. App. 2005). When, as in this case, the trial court declined to intervene, and refused to set aside the jury verdict, it is not the province of this Court to do so unless the verdict is wholly unwarranted under the law and the evidence. Indian Trucking v. Harber, 752 N.E.2d 168, 178-179 (Ind. Ct. App. 2001).

When reviewing a trial court's ruling on a motion for judgment on the evidence, we examine the evidence and the reasonable inferences most favorable to the nonmoving party from a quantitative as well as qualitative perspective. Northrop Corp. v. General Motors Corp., 807 N.E.2d 70, 87 (Ind. Ct. App. 2004). Quantitatively, evidence may fail only where there is none at all; however, qualitatively, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom. Id.

19

Although Nestel contends that its statement to Indiana Drywall was not a misrepresentation of existing fact, the evidence presented at trial suggests otherwise. As set forth above, Goldon represented to Indiana Drywall that it would immediately pay the balance owed if Indiana Drywall would release the lien. The combined testimony of Judy and Greg Kelly remains unrefuted. Specifically, Nestel represented to the Kellys that once Indiana Drywall released and waived its rights under the lien, Indiana Drywall would be paid immediately. However, Indiana Drywall was not paid and, as a result, it lost all rights under the lien, could no longer afford to be in business, and was forced to close its operations.

Such a misrepresentation by Nestel was with regard to an existing fact at the time it was made, i.e. that Nestel would pay Indiana Drywall as soon as the release and waiver were signed. It was Greg Kelly's belief that once Indiana Drywall signed the release, the funds that Nestel owed them would be paid. Nestel was conveying to Indiana Drywall that it was ready to pay the money immediately after the release and waiver had been signed. Therefore, Nestel was misrepresenting an existing fact at the time.

Nestel also cannot successfully contend that Indiana Drywall was not harmed by the signing of the release and waiver. Indeed, the evidence at trial demonstrated that Indiana Drywall believed that it was relinquishing its lien when it signed that document. Tr. p. 152. Nestel induced Indiana Drywall to forego its rights under the lien by misrepresenting that it would immediately get paid as a result. Id. at 150. The fact remains that Nestel deceptively communicated to Indiana Drywall that it would be paid

20

immediately following its relinquishment of the lien. As a result of this misrepresentation, Indiana Drywall surrendered the lien, which was the only remaining leverage it had to secure payment from Nestel, and the balance remained unpaid.

Indiana Drywall presented sufficient evidence at trial to establish that it reasonably relied upon Nestel's misrepresentations to its own detriment when it signed the Release and Waiver that resulted in the release of the lien. The evidence reveals that Indiana Drywall relied on Nestel's representation of immediate payment and based upon its reliance, it gave up its rights under the lien and went out of business. Tr. p. 112, 151-52.

In light of these circumstances, Nestel has presented no evidence suggesting that Indiana Drywall's fraud claim should have been removed from the jury. In short, Indiana Drywall established at trial that it reasonably relied on the deceptive statements that Nestel made in deciding to sign the release and waiver and sustained damages as a result. Thus, the trial court properly denied Nestel's motion for judgment on the evidence.

### 4. Sufficiency of the Evidence

Finally, Nestel argues that the evidence was insufficient to support the verdict for fraud. On appeal, we will "sustain a general verdict upon any theory consistent with the evidence," reversing a jury's verdict "only where there is a total failure of evidence or where the jury's verdict is contrary to the uncontradicted evidence." Everage v. N. Ind. Public Serv. Co., 825 N.E.2d 941, 950 (Ind. Ct. App. 2005). We will not reweigh the evidence or judge credibility of witnesses, but will only determine whether the jury's verdict is supported by substantial evidence of probative value. Hanas v. Rasmussen, 484

21

N.E.2d 63, 66 (Ind. Ct. App. 1985). The evidence and all reasonable inferences drawn therefrom will be viewed in favor of the verdict. Callaway v. Callaway, 932 N.E.2d 215, 220 (Ind. Ct. App. 2010).

In our view, it is apparent that the designated evidence at the summary judgment stage and the evidence that Indiana Drywall presented at trial in its case-in-chief, was sufficient to support the jury's verdict on the fraud count. Thus, we decline to set aside the jury's May 25, 2011 verdict against Nestel for fraud in the amount of $196,196.55, plus attorney fees.

The judgment of the trial court is affirmed in part and reversed in part.

DARDEN, J., and BAILEY, J., concur.