**PRICEWATERHOUSECOOPERS, LLP, Coopers & Lybrand, LLP, Appellants–Defendants,**

v.

**James D. MASSEY and Dennis E. Murray, Sr., Appellees–Plaintiffs.**

No. 49A05–0512–CV–719.

Court of Appeals of Indiana.

Feb. 7, 2007.

Lee B. McTurnan, Anne L. Cowgur, Kenneth J. Munson, McTurnan & Turner, Indianapolis, IN, Attorneys for Appellants.

Henry J. Price, Ronald J. Waicukauski, Carol A. Nemeth, Price Waicukauski & Riley LLC, Indianapolis, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Chief Judge.

PricewaterhouseCoopers, LLP (including its predecessor Coopers & Lybrand) ("PwC") brings this interlocutory appeal contending that the trial court erred in denying its motion to dismiss the complaint of James D. Massey and Dennis E. Murray, Sr. (together, "Massey/Murray"), former directors of Conseco, Inc. ("Conseco"). On appeal, PwC raises three issues of which we find the following to be dispositive: whether Massey/Murray's claims are solely derivative in nature such that Massey/Murray have no standing to sue PwC in a direct action.[1]

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY[2]

Massey/Murray were longstanding stockholders of Conseco with substantial holdings. From 1994 until 2000, Massey/Murray were members of Conseco's board of directors ("Board") and, while on Conseco's Board, were also part of the Board's audit committee ("Audit Committee"). During that same time period, PwC was Conseco's independent auditor.

Massey/Murray participated in Conseco's Directors & Officers Program ("D & O Program"), which allowed directors and officers to borrow money from certain approved financial institutions to finance the acquisition of Conseco stock. The goal of the D & O Program was to "provide important benefits to the company including,

---

1. PwC's other claims of error were that Massey/Murray failed to state a claim for breach of fiduciary duty and failed to properly plead a fraud claim. Because we dismiss Massey/Murray's complaint on the basis of the shareholder standing rule, we need not address these remaining issues.

2. Oral argument was heard on this case on September 28, 2006 in Indianapolis. We commend counsel on the quality of their written and oral advocacy.

as spelled out in the D & O Plans, to ensure the alignment of the interests of the plan participants with the interests of all shareholders and to increase the participants' motivation to manage the company as owners." *Appellants' App.* at 7. In addition to acquiring shares through the D & O Program, Massey/Murray also purchased thousands of Conseco shares, directly and indirectly, with non-borrowed funds.

Conseco's financial difficulties began after its 1998 acquisition of Green Tree Financial Services Corporation—a business that managed the origination, purchase, and sale of loans, some of which consisted of interest-only securities. Following the acquisition, Massey/Murray, as members of the Board and Audit Committee, routinely received and reviewed PwC's audits of Conseco's public financial statements. PwC also provided Massey/Murray, both orally and in writing, with information about Conseco's financial condition. Massey/Murray contend that, from 1998 through 2000, PwC misrepresented Conseco's financial condition and that, in reliance on those statements, Massey/Murray purchased and continued to hold Conseco shares. Conseco filed for bankruptcy on December 17, 2002, which left Mas-

sey/Murray with worthless shares and owing millions of dollars under the D & O Program.[3]

On March 22, 2005, Massey/Murray filed a complaint against PwC claiming: (1) that PwC breached its fiduciary duty to Conseco, its Board, its Audit Committee, and Massey/Murray by making material misrepresentations and omissions with respect to Conseco's cash flow, the value of interest-only securities, and accounting control; and (2) that PwC committed common law fraud by knowingly or recklessly misrepresenting Conseco's value, which Massey/Murray relied on to their detriment.[4] On May 27, 2005, PwC moved to dismiss the complaint on the grounds that: (1) Massey/Murray lacked standing under the shareholder standing rule to bring claims directly against PwC; (2) the breach of fiduciary duty claim was barred by expiration of the two-year statute of limitations; (3) Massey/Murray failed to state a claim for breach of fiduciary or other duty owed to them as shareholders of Conseco; (4) Massey/Murray failed to plead fraud with the particularity required under Trial Rule 9(B); and (5) Massey/Murray failed to state a claim for fraud because the alleged misstatements were not statements of past or existing fact. *Appellants' Br.* at 2.[5]

---

**3.** The complaint refers to Conseco and New Conseco. *Appellants' App.* at 7. The latter corporation came into existence after the bankruptcy and was Conseco's successor corporation pursuant to an approved bankruptcy reorganization. Because the distinction between these two entities does not impact our holding, we refer to both entities as "Conseco."

**4.** As a preliminary matter we note that Massey/Murray brought a diversity action in the Federal District Court for the Southern District of Indiana raising comparable claims against Merrill Lynch, *i.e.*, that the plaintiffs suffered damages because they "purchased and/or retained large amounts of Conseco stock (which has since become worthless) based upon Merrill Lynch's alleged misrepre-

sentations." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 644 (7th Cir.2006). The complaint against Merrill Lynch was dismissed with prejudice after the District Court found "that the plaintiffs' claims were based solely on the diminution of Conseco's stock value and, as a result, their claims were derivative in nature—*i.e.*, could be brought only on behalf of Conseco itself and therefore could not support a direct action brought individually by the plaintiffs." *Id.* at 645. On appeal, the Seventh Circuit, applying Indiana law, affirmed the District Court's decision. *Id.* at 651.

**5.** The record before us does not contain a copy of PwC's motion to dismiss. Therefore, we cite to the grounds for dismissal set forth in the Appellants' Brief.

Following oral argument before the Honorable Magistrate Burnett Caudill, the Honorable Judge John F. Hanley accepted the Magistrate's recommendations and, on September 22, 2005, denied PwC's motion to dismiss without explaining the reason for his ruling. *Appellants' App.* at 4–5. On November 17, 2005, the issue was certified for appeal pursuant to Ind. Appellate Rule 14(B)(1), and this Court accepted jurisdiction on February 21, 2006. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

■■■■ PwC contends that the trial court erred in denying its motion to dismiss Massey/Murray's complaint. The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is de novo. *Paniaguas v. Endor, Inc.,* 847 N.E.2d 967, 969 (Ind.Ct. App.2006), *trans. denied; Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). A 12(B)(6) motion tests the legal sufficiency of a claim, not the facts supporting it.[6] *Brown v. Delaney,* 840 N.E.2d 6, 8 (Ind.Ct. App.2005); *Marcuccilli v. Ken Corp.,* 766 N.E.2d 444, 448 (Ind.Ct.App.2002). On review, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Brown,* 840 N.E.2d at 8; *Marcuccilli,* 766 N.E.2d at 448. We stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Brown,* 840 N.E.2d at 8. We may sustain the trial court's ruling if we can affirm on any basis found in the record. *Id.*

■■■■ When filing a complaint, "[t]he plaintiff is required to provide a 'clear and concise statement that will put the defendants on notice as to what has taken place

and the theory that the plaintiff plans to pursue.'" *Godby v. Whitehead,* 837 N.E.2d 146, 149 (Ind.Ct.App.2005), *trans. denied* (quoting *Donahue v. St. Joseph County,* 720 N.E.2d 1236, 1239 (Ind.Ct. App.1999)). Dismissal of a complaint is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.; Donahue,* 720 N.E.2d at 1239. In making this determination, we look only to the complaint and may not resort to any other evidence in the record. *Brown,* 840 N.E.2d at 8.

PwC contends that Massey/Murray lacked standing to bring this suit. The United States Supreme Court has explained that standing has two related components: the federal constitutional requirement of Article III and nonconstitutional prudential considerations. *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.,* 493 U.S. 331, 335, 110 S.Ct. 661, 664, 107 L.Ed.2d 696 (1990). PwC does not raise federal constitutional considerations; instead, it argues that Massey/Murray do not have standing to bring the suit under the prudential consideration of the shareholder standing rule.

■■■■ While the term "shareholder standing rule" does not appear in any published Indiana cases, the United States Supreme Court has explained:

> [T]he rule is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment.

---

**6.** In the absence of a copy of the motion to dismiss, we accept the parties' statement that the applicable standard of review is that for a

motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). *Appellants' Br.* at 8; *Appellees' Br.* at 7–8.

*Id.* at 336, 110 S.Ct. 661. (citations omitted). Without using that term, Indiana courts have recognized this well-established general rule of corporate law that shareholders of a corporation may not bring actions in their own name to redress an injury to the corporation. *Knauf Fiber Glass, GMBh v. Stein,* 622 N.E.2d 163, 165 (Ind.1993); *Speedway Realty Co. v. Grasshoff Realty Corp.,* 248 Ind. 6, 9, 216 N.E.2d 845, 846 (Ind.1966) ("It is fundamental that every action must be prosecuted in the name of the real party in interest." (quotation and citation omitted)); *Barth v. Barth,* 693 N.E.2d 954, 957 (Ind. Ct.App.1998), *trans. denied.* The rationale for this rule is twofold.

> First, if a shareholder sues for money damages for injury to the corporation, there is a concern that the corporation itself could still sue and inflict double punishment on the defendant. Meanwhile, the shareholder has received money that is really owed to the corporation. Second, there is a concern that the real party's interests will not be taken into account if that party is not represented in the action. The shareholder and the corporation may have different interests and goals in litigation, and the shareholder could act in ways that harm the corporation, even if unintentionally.

*Huffman v. Office of Envtl. Adjudication,* 811 N.E.2d 806, 814 (Ind.2004).

■■■ In general, a shareholder may bring a derivative action or a direct action. A derivative action is one brought ·by a shareholder in the name or right of a corporation to redress an injury sustained by, or to enforce a duty owed to, the corporation. 2 PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01(a) (A.L.I.1992). Usually a shareholder brings a derivative action on the corporation's behalf against a third party because of the corporation's failure to sue the third party. *See G & N Aircraft, Inc. v. Boehm,* 743 N.E.2d 227, 234 (Ind.2001). Derivative actions arise from the premise that the stockholders of a corporation, for the purposes of all litigation growing out of the relations between such corporation and a third person, have surrendered their personal or individual entity to the corporation in which they are stockholders. *Scott v. Anderson Newspapers, Inc.,* 477 N.E.2d 553, 563 (Ind.Ct. App.1985), *trans. denied; Marcovich v. O'Brien,* 63 Ind.App. 101, 111, 114 N.E. 100, 103 (1916).

■■■ To maintain a derivative action, a shareholder must satisfy the following four requirements of Indiana Trial Rule 23.1: (1) the complaint must be verified; (2) the plaintiff must have been a shareholder at the time of the transaction of which he or she complains; (3) the complaint must describe the efforts, if any, made by the plaintiff to obtain the requested action from the board of directors and the reasons for failing to obtain such action or for not making the effort; and (4) the plaintiff must fairly and adequately represent the interests of the shareholders. *Edgeworth–Laskey Props., L.L.C. v. New Boston Allison Ltd. P'ship,* 793 N.E.2d 298, 304–05 (Ind.Ct.App.2003); *see Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292, 306 (Ind.Ct.App.2000). T.R. 23.1 recognizes the underlying premise that directors have a corporation's best interest in mind and should be given the first opportunity to act in the corporation's interest. Because recovery in a derivative suit goes to the corporation as a whole and not to the individual shareholder, derivative actions ensure that shareholders with rights potentially divergent from the corporation cannot file suits that will in any way harm the corporation, prejudice the interests of other shareholders, or interfere with corporate creditors. *Massey v.*

*Merrill Lynch & Co.,* 464 F.3d 642, 647 (7th Cir.2006); *Boehm,* 743 N.E.2d at 245; *Barth v. Barth,* 659 N.E.2d 559, 561 (Ind. 1995) (citing *W & W Equip. Co., Inc. v. Mink,* 568 N.E.2d 564, 568 (Ind.Ct.App. 1991), *trans. denied* ).

 By contrast, a direct action is one that is initiated by a shareholder on his own behalf and in his own name to vindicate rights belonging to the shareholder himself. 2 PRINCIPLES OF CORPORATE GOVERNANCE § 7.01. *See Boehm,* 743 N.E.2d at 234. "An action in which the [share]holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the [share-]holder in an individual capacity." 2 PRINCIPLES OF CORPORATE GOVERNANCE § 7.01. These actions are typically initiated to enforce a right to vote, compel dividends, prevent oppression or fraud against minority shareholders, inspect corporate books, and to compel shareholder meetings. *Marcuccilli,* 766 N.E.2d at 449 (citation omitted); 2 PRINCIPLES OF CORPORATE GOVERNANCE § 7.01, comment c.[7]

Both parties agree that Massey/Murray failed to comply with T.R. 23.1. PwC contends that this lack of compliance with T.R. 23.1, when the claim is clearly derivative, requires the claim to be dismissed pursuant to the shareholder standing rule. In support of its contention that Massey/Murray's claims are derivative, PwC cites to the following provisions in their complaint:

31. PwC held itself out as a worldwide expert in advising *corporations,* their audit committees, and their directors as to audit matters . . .

33. PwC at all times owed the highest of fiduciary duties to *Conseco, its Audit Committee, and its Board of Directors,* specifically including the plaintiffs, Massey/Murray.

38. One of the duties of PwC was to annually advise *Conseco, its Audit Committee, and its Board of Directors* as to the adequacy for each calendar year of available cash flow to service all expenses . . .

52. [PwC], in breach of its fiduciary duties *to Conseco's Board of Directors, to its Audit Committee and to plaintiffs,* failed to advise of this overvaluation [of interest-only securities] until early 2000.

58. PwC knew or should have known of these accounting control problems and had a duty to disclose them *to the Audit Committee and the Board of Directors, including plaintiffs . . . .*

61. PwC breached its fiduciary duty *to Conseco, its Board members and Audit Committee members, including plaintiffs.*

*Appellants' Br.* at 10–11 (emphasis in original) (citations omitted) (citing to *Appellants' App.* at 13, 14, 17, 18). PwC asserts that, to the extent Massey/Murray are even included in these allegations, it is because of their roles as representatives of Conseco, i.e., being on the Board and Audit Committee.

Massey/Murray counter that there are "two major, often overlapping, exceptions

---

**7.** The distinction between direct and derivative actions has been complicated in more recent years by acknowledgment in many jurisdictions, including Indiana, that a shareholder in a closely held corporation need not always bring claims of corporate harm as derivative actions. Instead, in such an arrangement, the shareholders are more realistically viewed as partners, and the formalities of corporate litigation may be bypassed. *Barth,* 659 N.E.2d at 561. This exception does not, however, apply to a shareholder of a publicly-traded company like Conseco. *Marcuccilli,* 766 N.E.2d at 449.

to the general rule that a shareholder cannot sue for injuries to his corporation: (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5911 (2000). *See Buschmann v. Prof'l Men's Assoc.*, 405 F.2d 659, 662 (7th Cir.1969); *Knauf Fiber Glass, GMBh v. Stein*, 622 N.E.2d at 165; *Sacks v. Am. Fletcher Nat'l Bank & Trust Co.*, 258 Ind. 189, 279 N.E.2d 807, 811–12 (Ind.1972). While acknowledging the general rule that the shareholder standing rule precludes them from filing a suit in their own names to redress injury to Conseco, Massey/Murray assert that they fall within an exception to this rule.

Addressing the first exception, Massey/Murray contend that PwC owed them a special duty that arose not by contract, but, instead, by means of PwC being a firm of professional accountants. Citing to two opinions from the Seventh Circuit, Massey/Murray argue that under Indiana law a duty may be imposed without privity if a defendant is a professional and had actual knowledge that a third person was relying on his rendering of professional services. *See Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 749 (7th Cir.1999); *The Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 157–58 (7th Cir.1987). Massey/Murray contend that PwC, as an independent auditor, provided *professional* financial advisory services with actual knowledge that Massey/Murray were relying on these services, thus creating a duty. *See Holtz*, 185 F.3d at 749; *Toro*, 827 F.2d at 157–58 (applying Indiana law in a diversity action, court held accountant may be liable for damages to another party if there is affirmative evidence of contact between accounting firm and injured party that indicates accountant's knowledge of injured party's reliance).

As evidence that PwC knew of Massey/Murray's reliance on the financial reports, Massey/Murray point to the fact that Murray informed the auditors that he was "relying specifically on PwC's representations and upon the fact that they were accurate and complete and did not contain any material omissions as it related to his position on the Audit Committee and his direct and indirect holdings and retention of Conseco stock." *Appellees' Br.* at 10. From this, they contend that PwC knew or should have known that Massey also was relying on the professional representations and their accuracy as it related to his position on the Audit Committee and his retention of Conseco stock. *Id.* Massey/Murray also point to PwC's knowledge of the D & O Program and of Massey/Murray's participation in it as evidence "that the participants in that program, including Directors Massey and Murray, would be expected to rely on PwC's advice in making decisions about their individual participation in the D & O Program." *Id.* at 11. Massey/Murray contend that under these circumstances, PwC owed a duty to Massey/Murray that was separate from the duty that PwC owed to other shareholders. Accordingly, Massey/Murray offer that the general rule precluding shareholder standing should not apply. We disagree.

While contending that their contact with PwC created a special relationship, Massey/Murray's own words undermine this argument. The facts alleged in the complaint do not focus on PwC's relationship with Massey/Murray as individuals, but instead focus on the relationship between PwC and Conseco and its Board. As PwC correctly notes, the following provisions of

the complaint set forth derivative claims: (1) PwC held itself out as a worldwide expert in advising corporations, audit committees, and directors as to audit matters; (2) PwC owed the highest fiduciary duties to Conseco, its Audit Committee, and its Board; (3) one of PwC's duties was to annually advise Conseco, its Audit Committee, and its Board as to the adequacy of available cash flow; (4) PwC breached its fiduciary duties to Conseco's Board, to its Audit Committee, and to Massey/Murray by failing to advise them until 2000 of an overvaluation of the securities; PwC had a duty to the Audit Committee and the Board, including Massey/Murray, to disclose accounting problems; and (6) PwC breached its fiduciary duty to Conseco, its Board members, and the Audit Committee members, including Massey/Murray. Massey/Murray relied on PwC's representations as it "related to [their] position on the Audit Committee and [their] direct and indirect holdings and retention of Conseco stock." *Appellants' App.* at 10–11. Reference in each provision to PwC's duty to the Board and Audit Committee, with only incidental reference to themselves, reveals that PwC's duty, if any, arises simply because Massey/Murray were on Conseco's Board.

Massey/Murray's contention that an "accountant has a responsibility not only to clients, but also to investors, creditors, and the larger business and financial communities," *Appellees' Br.* at 9 (citing the American Institute of Certified Public Accountants), further undermines its argument

that PwC owed them a special duty. As they themselves assert, in the absence of a contractual relationship, the responsibility PwC has for Massey/Murray, if any, is a responsibility equally owed to "investors, creditors, and the larger business and financial communities." *Appellees' Br.* at 9. We find no professional relationship to support Massey/Murray's contention that PwC owed them a special duty.

■ Addressing the second exception, Massey/Murray contend that, even in light of corporate harm, they can sue on the basis that their injury is separate and distinct from that suffered by other shareholders. As the Seventh Circuit noted in Massey/Murray's federal case:

Determining when a shareholder has suffered a distinct and separate injury from that suffered by other shareholders is not without complication. As an initial matter, whenever a corporation is harmed by a third party, the shareholders are also harmed, albeit indirectly. Corporate losses are investor losses as well, even though the losses may not be equal across the investors, but rather proportionate to the number (or type) of shares an investor holds. Nonetheless, the long-standing rule is that a harm to a corporation that harms a shareholder only through a diminution in share price cannot amount to a "distinct and separate injury" because all shareholders are essentially harmed in the same manner. *See Twohy [v. First Nat'l Bank of Chicago,* 758 F.2d 1185, 1194 (7th Cir. 1985).][8]

**8.** Expressing the same idea in a somewhat different fashion, in *Adair v. Wozniak,* 23 Ohio St.3d 174, 492 N.E.2d 426 (1986) the Ohio Supreme Court explained:

Where the defendant's wrongdoing has caused direct damage to corporate worth, the cause of action accrues to the corporation, not to the shareholders, ... even though in an economic sense real harm

may well be sustained by the shareholders as a result of reduced earnings, diminution in the value of ownership, or *accumulation of personal debt and liabilities* from the companies financial decline. The personal loss and liability sustained by the shareholder is both duplicative and indirect to the corporation's right of action.

*Merrill Lynch*, 464 F.3d at 646. In an attempt to distinguish themselves from other shareholders, Massey/Murray contend that their injury arose not just because they were shareholders, but instead, because, as participants in the D & O Program, they were exposed to personal liability for loans negotiated and guaranteed by Conseco for Conseco's benefit.[9]

Applying Indiana law to address this same argument in Massey/Murray's federal suit, the Seventh Circuit correctly explained:

> [T]he fact that the plaintiffs borrowed money to purchase stock (with the interest charges fronted by Conseco) and are now on the hook to pay those personal debts does not alter the nature of their claims. The *method* by which a shareholder funds a stock transaction does not alter the fundamental *nature* of the injury, which remains the critical inquiry here. The injury experienced by the plaintiffs was the diminution in Conseco's share price. Without the plunge in share prices, the plaintiffs would have no damages because the collateral on their loans (i.e., the Conseco shares) would have value. And although the plaintiffs tip-toe around this fundamental problem in their briefs, the allegations in their complaint forthrightly acknowledge this: "Plaintiffs were damaged by Merrill Lynch's misrepresentations and omissions because they are exposed to potential liability on the D & O Loans *because the stock which the loans were used to purchase became worthless as a result of the Green Tree purchase.*"

23 Ohio St.3d at 178, 492 N.E.2d at 429 (emphasis added).

9. Conseco's benefit from the D & O Program is described as ensuring "the alignment of the interests of the plan participants with the interests of all shareholders and to increase the participants' motivation to manage the

*Merrill Lynch*, 464 F.3d at 648. Here, Massey/Murray use comparable language in their complaint when they allege: "Plaintiffs were damaged by PwC's misrepresentations and omissions because they are exposed to potential liability on the D & O Loans although [sic] the stock which the loans were used to purchase became worthless and because they continued to own their shares of Conseco stock outside the D & O Program." *Appellants' App.* at 20.

Massey/Murray rely on *Sacks* and *Buschmann* to support this argument that, having been harmed as individuals, they have standing to sue. Like the Seventh Circuit, we find this authority is inapposite. "[T]hese cases stand only for the well-established proposition that a plaintiff may bring a direct action when the plaintiff has a *separate* contractual agreement that exposes the plaintiff to an injury that is distinct (i.e., personal) from the injury suffered by other shareholders." *Merrill Lynch*, 464 F.3d at 648 (emphasis in original).

We adopt the Seventh Circuit's analysis, which distinguished *Sacks* and *Buschmann* as follows:

> [I]n *Sacks*, the plaintiff shareholder provided a personal guaranty to a corporate loan, purportedly under the assumption that a third-party bank would continue funding the corporation. The bank did not continue funding, the guaranty was called upon, and the plaintiff brought both a derivative and direct action against the third-party bank. The Indiana Supreme Court held that the

company as owners." *Appellants' App.* at 7. In this way, "public awareness of the participants' increased ownership stake in the shares of Conseco would be extremely beneficial to Conseco in the attitude and perception of the shareholders and analysts." *Id.* at 8.

plaintiff could maintain a direct action because the personal guaranty arose from a "breach of a duty owed specially to the stockholder separate and distinct from the duty owed to the corporation." Similarly, in *Buschmann*, the plaintiff provided a personal guaranty to a corporation's debt, which was called upon by the bank when the corporation's indebtedness reached excessive levels. Applying Indiana law, [the Seventh Circuit] held: ". . . The defendant made promises directly to Buschmann the breach of which gave rise to a cause of action. Buschmann's cause of action is manifestly personal and not derivative since his liability to pay the corporation's indebtedness to the Bank, which is his principal item of damage, does not arise from his status as a stockholder of the corporation."

*Merrill Lynch,* 464 F.3d at 648–49 (citations omitted). As such, the Seventh Circuit correctly noted that *Sacks* and *Buschmann* fall squarely within the general rule distinguishing direct and derivative actions, i.e., the injury was based on a contractual duty to guarantee loans, which is a separate duty from the one owed to the shareholders. *Id.* at 649.

The more significant difference between Massey/Murray and the plaintiffs in *Sacks* and *Buschmann* is the function of the plaintiffs' obligations to both the corporation and the third-party—the obligations from which the injuries arise. Again, we adopt the Seventh Circuit's analysis:

> In *Sacks* and *Buschmann*, the plaintiffs undertook specific contractual duties primarily aimed at benefiting the corporation (i.e., guaranteeing corporate loans). They were injured in two ways when the corporation's fortunes turned south. First, like the plaintiffs in this case, they lost the value of their shares. That is a generalized injury to all share-

holders and is properly considered a derivative injury. Second, unlike the plaintiffs in this case, they suffered out-of-pocket costs—*additional* losses from the diminution in share price—because their guarantee of corporate loans was called upon by either the corporation or the bank. It is this separate and distinct injury that stands apart from the one suffered by the other shareholders and which therefore provides the toe-hold for a direct action.

*Merrill Lynch,* 464 F.3d at 649 (emphasis in original). The plaintiffs here can show no such injury because they cannot claim any cognizable injury aside from the diminution in share value. Massey/Murray have no out-of-pocket expenses. Their only injury is to repay the funds that they themselves borrowed to purchase stock. This injury makes them no different than any other shareholder. As the Seventh Circuit explained:

> To hold otherwise would lead to an absurd result. Under the plaintiffs' theory, any shareholder who funded a stock purchase through any form of loan—whether a margin loan, an advance on a home equity line or even a loan from relatives—could claim a separate and distinct injury because they were now "personally liable" on a loan instrument. But merely being required to pay for the shares that one purchased surely cannot be a distinct injury that opens the door to direct recovery, ahead of all the other shareholders, who equally lost the value of their investments. If anything, the plaintiffs faired better than the "ordinary shareholders" because they effectively lost their money significantly *later* than the investors who paid cash upfront for their shares. Thus, the plaintiffs at least enjoyed the time-value benefit of their money, including the option to place these funds in more lucrative investments. . . . As a result, allow-

ing the plaintiffs to skip now to the front of the recovery line is not only contrary to controlling case law, but would also be a highly inequitable result.

*Id.* at 649 (emphasis in original).

Massey/Murray offer a second, related argument as to why their injury is separate and distinct and allows them to have standing. Citing to cases from other jurisdictions, Massey/Murray contend that plaintiffs, like themselves, may sue individually, rather than derivatively, when they have relied to their detriment on fraudulent misrepresentations made directly to them by the defendants. *Appellees' Br.* at 15. Massey/Murray contend that, but for PwC's misrepresentations and omissions concerning Conseco's financial condition, Massey/Murray would not have purchased additional Conseco shares through the D & O Program and incurred the debt liability associated with these purchases. *Id.* at 18. These allegations run headlong into the same difficulty outlined above, i.e., irrespective of PwC's misrepresentations, if any, Massey/Murray's damage is exclusively the result of a generalized decline in Conseco's share price, which, again, is a derivative injury. *See Merrill Lynch,* 464 F.3d at 650.

When reading the allegations of the complaint in the light most favorable to Massey/Murray as the non-moving parties, the facts alleged in the complaint are incapable of supporting Massey/Murray relief under any set of circumstances. The nature of this claim, as revealed by Massey/Murray's own words, is derivative. The trial court therefore erred in denying PwC's motion to dismiss for failure to state a claim.

As a final note, we address a concern raised in oral argument about insider trading. Specifically, if we allow Massey/Murray to bring this direct action against Conseco's auditor just because Massey/Murray

were in a position to personally meet with the auditor and assert their reliance, there is a risk of running afoul of insider trading laws. In *Merrill Lynch,* the Seventh Circuit also had cause to comment on this concern:

[I]t would be a curious—and unfair—result if, as the plaintiffs argue, corporate insiders [like themselves] were permitted to maintain direct actions that "ordinary shareholders" could not bring. Such a result would provide greater protections to insiders, who presumably have the greatest access to information on the future prospects of a corporation. Those with the most well-informed front-end risk assessments would also receive the greatest financial protections at the back-end of a deal gone wrong. This would invert the basic structure of corporate and securities fraud laws, particularly the prohibitions on insider trading, which generally aim to curtail trading advantages by corporate insiders and protect investors from such abuses.

*Merrill Lynch,* 464 F.3d at 651 (citing *Fletcher Cyclopedia of the Law of Private Corporations* § 900.65). Like our brethren in the Seventh Circuit, "We are not inclined to create such a generous exception to bedrock corporate law principles, and instead hold that [Massey/Murray] must take their proper place in the recovery line along with all other investors." *Id.*

Reversed and remanded.

SHARPNACK, J., and MATHIAS, J., concur.