# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2015, 9:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

R. William Jonas, Jr.
Hammerschmidt, Amaral & Jonas
South Bend, Indiana

ATTORNEYS FOR APPELLEE
SIMON WILSON

Andrew W. Hull
Jason L. Fulk
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
GARY MORGAN

Brian S. Jones
Joel T. Nagle
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CROWE HORWATH LLP

Eric A. Riegner
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Magic Circle Corp. d/b/a Dixie Chopper, Arthur Evans, Wesley Evans, Jeffrey Haltom, | December 30, 2015 |
| | Court of Appeals Case No. 71A03-1507-PL-790 |
| *Appellants-Plaintiffs,* | Appeal from the St. Joseph Circuit Court |
| v. | The Honorable Michael G. Gotsch, Judge |
| Simon Wilson, Gary Morgan, and Crowe Horwath LLP, | Trial Court Cause No. 71C01-1404-PL-93 |
| *Appellees-Defendants* | |

**Baker, Judge.**

[1] Appellants Magic Circle Corporation (Magic Circle), Arthur Evans, Wesley Evans, and Jeffrey Haltom appeal the judgment of the trial court dismissing their complaint for fraud against Simon Wilson and Gary Morgan. Finding that the trial court did not err in concluding that the complaint failed to allege fraud with the particularity required by Indiana Trial Rule 9(B), we affirm.

## Facts

[2] For more than thirty years, Magic Circle designed and manufactured lawnmowers under the name Dixie Chopper. In late 2008 and early 2009, Magic Circle hired Simon Wilson and Gary Morgan to help steer the company through difficult economic times. Magic Circle alleges that, during their time with the company, Wilson and Morgan knowingly misrepresented the company's financial position. It was not until 2013 that members of the company's board realized that the company had incurred massive losses

throughout this period. Morgan had left the company in 2011 and the board accepted Wilson's resignation in 2013.

[3] On December 15, 2014, after having been given an opportunity to amend its first complaint,[1] Magic Circle filed its second amended complaint against Wilson and Morgan alleging fraud and breach of fiduciary duty. Three shareholders, Arthur Evans, Wesley Evans, and Jeffrey Haltom, also joined as plaintiffs, alleging that they had been personally injured when they were induced to buy more of the company's stock as a result of Wilson's and Morgan's misrepresentations. The complaint requested that the trial court award Magic Circle attorney fees as well as treble damages.[2]

[4] On February 17, 2015, Wilson filed a motion to dismiss Magic Circle's complaint, alleging that the complaint failed to plead fraud with the particularity required by Indiana Trial Rule 9(B) and that the plaintiffs had therefore failed to state a claim under Indiana Trial Rule 12(B)(6). On May 15, 2015, after hearing argument on the issue, the trial court granted the motion, and dismissed Magic Circle's claims against Wilson and Morgan with prejudice. The trial court reasoned that the allegations were too general to meet Rule 9(B)'s particularity requirement. As to the individual plaintiffs' claims of personal damage, the trial court reasoned that these claims could not be brought

---

[1] Appellants have not included the original complaint in the record.

[2] Magic Circle also alleged malpractice against Crowe Horwath, the company's former accounting firm. These claims do not concern us here as the trial court has yet to rule on them.

directly, but instead must be brought as derivative claims under Indiana Trial Rule 23.1, with which the plaintiffs had failed to comply. All plaintiffs now appeal.

# Discussion and Decision

## I. Direct v. Derivative Claims

[5] The complaint at issue in this case makes several claims that can be divided into two categories. First, there are claims brought by Magic Circle against Wilson and Morgan for alleged harm done to the corporation. Second, there is a claim brought directly by the above-mentioned individual plaintiffs for personal damages resulting from the same fraud. The trial court dismissed these latter claims, determining that they could not be brought directly, and we briefly comment on why the trial court was correct.

[6] The trial court determined that the individual plaintiffs, being Magic Circle shareholders, had suffered no injury distinct from the alleged injury to Magic Circle and, therefore, could not sue directly. This Court has recognized that "shareholders of a corporation may not bring actions in their own name to redress an injury to the corporation." *PricewaterhouseCoopers, LLP v. Massey*, 860 N.E.2d 1252, 1257 (Ind. Ct. App. 2007).

[7] The plaintiffs attempt to distinguish their injuries by pointing out that they "executed promissory notes to acquire funds to purchase more shares of Magic Circle." Reply Br. p. 17. They argue that, because they are personally liable on these notes, they have been personally injured and should be allowed to seek

recovery directly. *Id.* However, this Court has heard this argument before and held that

> The plaintiffs can show no such injury because they cannot claim any cognizable injury aside from the diminution in share value. . . . Their only injury is to repay the funds that they themselves borrowed to purchase stock. This injury makes them no different than any other shareholder.

*PricewaterhouseCoopers*, 860 N.E.2d at 1262. In so holding, we agreed with the reasoning of the Seventh Circuit that

> "To hold otherwise would lead to an absurd result. Under the plaintiffs' theory, any shareholder who funded a stock purchase through any form of loan—whether a margin loan, an advance on a home equity line or even a loan from relatives—could claim a separate and distinct injury because they were now 'personally liable' on a loan instrument."

*Id.* (quoting *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 649 (7th Cir. 2006)). Here, as the diminution in the share value of Magic Circle's stock is the sole reason for plaintiffs' injury, their direct claims must likewise fail.[3] With this issue out of the way, we now turn to the central question presented in this case: whether the complaint alleged fraud with sufficient particularity.

---

[3] Magic Circle attempts to argue that we should apply the exception outlined in *Barth v. Barth*, where our Supreme Court held that "'[i]n the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action'" under certain circumstances. 659 N.E.2d 559, 562 (Ind. 1995) (quoting A.L.I., *Principles of Corporate Governance* § 7.01(d)). However, Magic Circle fails to argue that it is, in fact, a closely held corporation and has failed to give us any information, such as the number of shareholders it has, from which we could make this determination. This argument therefore fails.

# II. Pleading Fraud

A person commits fraud when he has, (1) with knowledge or reckless ignorance of falsity, (2) made a material misrepresentation of past or existing facts, (3) which caused the complainant to rely on the misrepresentation to the complainant's detriment. *Ohio Farmers Ins. Co. v. Ind. Drywall & Acoustics, Inc.*, 970 N.E.2d 674, 684 (Ind. Ct. App. 2012). While our rules of trial procedure generally require only notice pleading, Indiana Trial Rule 9(B) provides an exception for complaints alleging fraud. *Dutton v. Int'l Harvester Co.*, 504 N.E.2d 313, 318 (Ind. Ct. App. 1987). The rule, which is nearly identical to Federal Rule of Civil Procedure 9(B), requires that:

> In all averments of fraud or mistake, the circumstances
> constituting the fraud or mistake shall be specifically averred.
> Malice, intent, knowledge, and other conditions of the mind may
> be averred generally.

T.R. 9(B); *McKinney v. State*, 693 N.E.2d 65, 71 (Ind. 1998).

Like its federal counterpart, Rule 9(B) serves the objectives of deterring groundless suits or "fishing expeditions," protecting the reputations of defendants, and providing defendants with sufficient information to enable them to prepare a defense. *McKinney*, 693 N.E.2d at 72; *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). In light of these objectives, we have held that this rule requires plaintiffs to state the time, the place, the substance of the false representations, the facts misrepresented, and to identify what was procured by fraud. *Ohio Farmers*, 970 N.E.2d at 683; *see also*

*DiLeo v. Ernst & Young*, 901 N.E.2d 624, 627 (7th Cir. 1990) (observing that the rule requires plaintiffs to state "the who, what, when, where, and how: the first paragraph of any newspaper story").

[10] Here, Magic Circle attempts to comply with Rule 9(B) by designating ten paragraphs in the middle of its complaint that purport to "detail the time, place, and specific content of false statements of fact by Morgan and Wilson that are formally recorded and documented in the Company's corporate records." Appellant's App. p. 18. However, close inspection of these paragraphs shows that they fail, both individually and collectively, to state a claim of fraud with the specificity necessary to effectuate Rule 9(B)'s purpose.

[11] We take the first of these paragraphs as an example. It reads:

> As recorded in the minutes for the Annual Shareholders meeting held March 11, 2009, at the offices of Magic Circle in Coatesville, Indiana . . . :
>
> > Mr. Wilson indicated the company began the year in a serious cash shortfall and the requirement for a turn-around plan. A plan was created and is kept on file at the company's headquarters. The company struggled throughout 2009 but the actions enacted in the year left the company solvent and in good position for the future.
>
> These statements were materially false and misleading. The actions of he and Morgan had not left the company "solvent and in a good position." In fact, Morgan and Wilson were materially misstating the company's financial results to the shareholders, all of which Crowe [Magic Circle's accountant] failed to detect by

failing to conduct GAAS audits. The minutes document[] [that] Morgan and Wilson provided the shareholder[s] written reports about the company's financial position and business operations. Those report[s] were materially inaccurate, mischaracterized Morgan and Wilson's actions, and provided a materially inaccurate picture of the company['s] overall position and its prospects. Each of the individual Plaintiffs attended the meeting, among others.

*Id.* at 18-19.

[12] We first note our bewilderment at Magic Circle's decision to quote directly from the *minutes* of the meeting, which by their very nature present a terse summary of events rather than a particularized account. As a result of this, the paragraph fails to provide us enough information to get a true picture of events. First, we cannot gather who made the statements at issue. While the first sentence of the minutes attributes a statement to Wilson, it is not clear whether the sentences that follow refer to his statements. Furthermore, although the minutes only refer to Wilson, the paragraph goes on to conclude that Wilson *and* Morgan "were materially misstating the company's financial results to the shareholders." *Id.* In short, we do not know who said what and, even were we to assume that both men spoke in unison, we would not know what was said.

[13] The paragraph also alleges that Morgan and Wilson gave shareholders "materially inaccurate" reports that "mischaracterized" their actions. *Id.* at 19. It does not, however, specify what was inaccurate, how the inaccuracy was material, what actions Wilson and Morgan had taken, or how they had mischaracterized these actions. Rule 9(B) requires that these questions be

answered with some specificity, and conclusory declarations, such as "[the reports] provided a materially inaccurate picture of the company['s] overall position and its prospects," come no closer to meeting this requirement. *Id.* The contention that "[Wilson] and Morgan's actions had not left the company 'solvent *and* in a good position'" is similarly vague. *Id.* at 18 (emphasis added). Was the company not solvent? Was it not in a good position? Or was is not both of these things at once? Does Magic Circle mean to say that the company was unable to pay its debts, or does it mean only to say that Wilson and Morgan had done nothing to help the cause? Magic Circle may view such questions as nitpicking, but we honestly do not know the answers.

[14] The complaint's next paragraph displays similar shortcomings. Magic Circle alleges:

> As recorded in the minutes for the Annual Shareholders meeting for fiscal year 2009, held November 11, 2010, at the offices of Magic Circle in Coatesville, Indiana, Wilson:
>
>> [C]ompleted a review of the 2009 financial performance of the company. Mr. Wilson discussed in detail the issue[s] the company faced in early 2009 and the resulting actions that were required to be taken. He discussed the action plan developed in concert with the Keystone consulting group that was adopted by the board in early April 2009. The plan was required to be presented to PNC bank due to financial defaults experienced at the end of quarter two. PNC accepted the plan and the loan was modified in early June (copy of the plan and First Amendment Agreement attached). Mr. Wilson

reviewed the 1st half of 2010 performance as these were available on the meeting date. There were several questions from Mr. Stan Morton in regards to measure of margins that were answered by Mr. Wilson and Mr. Morgan.

Each of these statements was materially false. The financial performances Wilson stated for 2009 was materially inflated. The actions he claimed had been taken were not in fact taken, the performance for the first half of 2010 provided was materially inflated, and the information Wilson provided PNC was materially inaccurate, as the "plan" he provided was never intended to be achieve[d] except through materially inflating the company's actual financial results. Morgan attended the meeting and, as noted, specifically answered questions that confirmed Mr. Wilson's false statements. Attending this meeting were each of the individual Plaintiffs in this lawsuit, among others.

*Id.* at 19.

[15] The minutes cited here do a slightly more thorough job of indicating who was speaking at this meeting, but we still have no true sense of what was actually going on. We are simply assured that everything Wilson said was false, again without being told what he said. We are also asked to imagine a plan that Wilson presented to a bank and assume, once again, that its contents were materially inaccurate. There is no mention of the substance of any of the alleged misrepresentations other than the perfunctory assertion that they generally dealt with finance. Then, in perhaps the complaint's most dubious moment, we are given the following word puzzle: "Morgan . . . specifically answered questions that confirmed Mr. Wilson's false statements." *Id.* We will

leave it to the interested reader to determine how many possible meanings can be derived from this phrase.

[16]     The complaint continues on in a similar fashion, perhaps in the hope that it will eventually land on *something* specific enough to satisfy Rule 9(B). However, even if the complaint had managed to include a paragraph which offered a sufficiently detailed description of events, it would not be enough at this point. It is clear from the complaint that Magic Circle believes all of the alleged misrepresentations it purports to detail are important and that the fraud came about through Magic Circle's reliance on the whole of these representations. *Id.* at 30. Thus, even had the complaint clearly alleged one instance of Wilson or Morgan knowingly misrepresenting information, it would still fail to plead fraud, as Magic Circle does not claim to have detrimentally relied on any one instance alone.

[17]     The complaint also contains a claim by Magic Circle that Wilson and Morgan breached their fiduciary duty. The trial court dismissed this claim for vagueness as well because, although it is styled differently, it relies on the alleged fraud and therefore sounds in fraud. This decision was correct. Rule 9(B) has been held to apply to claims "grounded in fraud," and such is the case here, as Magic Circle's breach of fiduciary duty claim is based on the same allegations of fraudulent conduct against Wilson and Morgan as its fraud claim. *McKinney*, 693 N.E.2d at 72.

[18]     We find that the appellants' complaint is insufficiently specific when judged in light of the purposes Rule 9(B) is intended to serve. While the appellants ask for another opportunity to plead this matter, they do not argue that more time will allow them to discover any relevant information that was not already in their possession at the time of this complaint's filing. About eighteen months passed between the filing of the original complaint and the dismissal of the second amended complaint, during which the appellants were given more than one opportunity to plead this matter with sufficient specificity. As one of the purposes behind Rule 9(B) is to put an end to meritless litigation brought in the hope of a settlement, we see no reason to drag this out further, and we believe that the trial court was correct to dismiss this case with prejudice.

[19]     The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.